# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| RAMI MIKHAIL | : | No. 2:15-cv-01505 |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| AEROSEAL, LLC and SEQUENT, INC. | : | |
| *Defendants* | : | |
| | : | |

## BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT AND <u>SANCTIONS OF DEFENDANT SEQUENT, INC.</u>

## I.      MATTER BEFORE THE COURT

Before this Honorable Court is the Motion for Summary Judgment of Defendant Sequent, Inc. ("Defendant" or "Sequent") as to the remaining claims asserted against it by Plaintiff Rami Mikhail ("Mikhail" or "Plaintiff") in the Amended Complaint. This Court previously partially granted Sequent's Motion to Dismiss, dismissing Counts I, III and IV. Because, after discovery, Plaintiff is unable to demonstrate facts to support its claims against Sequent, as set forth below, this Court should enter judgment on behalf of Sequent with respect to the remaining claims under the Pennsylvania Wage Payment Collection Law ("WPCL") (Count II) and for unjust enrichment (Count V).

## II.      PRELIMINARY STATEMENT

Sequent is an innocent bystander that has been unnecessarily dragged into a case brought by a spurned former employee of Defendant Aeroseal, LLC ("Aeroseal") who is seeking wages and other compensation that he is not entitled to receive. Plaintiff's dispute is with Aeroseal, not Sequent. Aeroseal hired Plaintiff. Aeroseal negotiated the terms of his employment. Aeroseal calculated the commission Plaintiff was entitled to receive for the meager sales work he performed

for the company. Aeroseal made the decision to terminate Plaintiff's employment, for cause, after he fell far short of meeting sales quotas he agreed to with Aeroseal. Aeroseal, in accordance with the employee handbook, decided not to pay Plaintiff accrued and unused PTO because he was terminated for cause. There is no dispute with respect to these facts. Nevertheless, Plaintiff is improperly seeking to hold Sequent responsible for the actions and conduct of Aeroseal. From day one, this dispute has been between Aeroseal and Plaintiff, and nothing that has been uncovered during the course of discovery has changed that. Based on the undisputed facts in the record, Sequent is entitled to judgment as a matter of law on the remaining claims Plaintiff has asserted against it in this case.

## III.    STATEMENT OF UNDISPUTED FACTS

Sequent incorporates by reference the separate Statement of Undisputed Facts that is being submitted along with this Motion for Summary Judgment.

## IV.    ARGUMENT

### A.    Standard of review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Colgate-Palmolive Co. v. Tandem Indus.*, 485 F. App'x 516, 518 (3d Cir. 2012). For purposes of a motion for summary judgment, "[m]aterial facts are those that could effect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011); *see also Jackson b. Booker*, 465 F. App'x 163, 166 (3d Cir. 2012) ("A genuine issue of material fact is one that could change the outcome of the

litigation."). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat summary judgment] . . . [as] there must be significantly probative evidence on which the jury could reasonably find for the [nonmoving party]." *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011). Stated differently, "[s]peculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Luncent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D.Pa 2000).

"A party seeking summary judgment . . . bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." *Mazaheri v. Prudential Ins. Co. of Am.*, 2007 WL 4440964, at *4 (E.D. Pa. Dec. 17, 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "Once the moving party has fulfilled its burden, the non-moving party must introduce specific evidence demonstrating a material issue of fact and the necessity for a trial."[1] *Bomanski v. US Airways Group, Inc.*, 620 F. Supp. 2d 725, 728 (E.D. Pa. 2009); *see also Schmidt v. Currie*, 217 F. App'x 153, 155 (3d Cir. Pa. 2007) (explaining that after moving party satisfies it in initial burden, "[t]he burden then shifts to the non-moving party, who may not rest on the mere allegations or denials of the adverse party's pleading . . . but must set forth specific facts showing that there is a genuine issue for trial."). "That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

---

[1] Under Federal Rule of Civil Procedure 56, evidence must be cable of being admissible at trial in order to be considered on summary judgment. Fed. R. Civ. P. 56(c)(2); *see also Philbin v. Trans Union Corp.*, 101 F. 3d 957, 961 n.1 (3d Cir. 1996) (explaining "hearsay statement . . . [that] is not capable of being admissible at trial . . . could not be considered on a motion for summary judgment"); *Barnes Found. v. Twp. of Lower Merion*, 982 F. Supp. 970, 981 (E.D. Pa. 1997) (internal citations omitted) ("Although the evidence presented on a motion for summary judgment does not have to be in admissible form, Rule 56(e) requires the presentation of evidence as would be admissible at trial, and thus the evidence must be reducible to admissible evidence at trial. . . .").

*Zitomer v. Med. Protective Corp.*, 2004 WL 1221405, at *3 (E.D. Pa. June 1, 2004) (citing *Celotex*, 477 U.S. at 322). If the evidence presented by the party opposing summary "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citation omitted).

### B.   Plaintiff's WPCL claims fail because Sequent had no contract with Plaintiff obligating it to pay Plaintiff.

Plaintiff contends that he is owed unpaid commissions and vacation pay. As this Court noted, however, in its ruling on Sequent's motion to dismiss (JA 0073-JA 0075), "Plaintiff's WPCL claim against Sequent fails on a theory of direct liability because the Amended Complaint does not contain facts from which it could be inferred that Sequent had 'a contractual obligation' to pay Plaintiff money." *Tomlinson v. Checkpoint Sys. Inc.*, 2008 WL 219217, at *8 (E.D. Pa Jan. 25, 2008) (citations omitted); *see also Scully v. WS Wats, Inc.*, 238 F.3d 497, 516-17 (3d Cir. 2000) (holding that WPCL "does not create a new right to compensation, but rather, merely establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay.") "If a court does not find that a plaintiff had a valid contract with a defendant employer, then the WPCL will not apply." *Tomlinson*, 2008 WL 219217 at *8. Discovery has not revealed any contract between Plaintiff and Sequent obligating Sequent to pay Plaintiff the compensation he claims he is owed. Accordingly, this Court should enter judgment in Sequent's favor and against Plaintiff on Plaintiff's WPCL claim.

### C.   Plaintiff's WPCL claim fails because Sequent was not Plaintiff's employer within the meaning of the WPCL.

Summary judgment should be granted on the WPCL claim because Sequent was not Plaintiff's employer within the meaning of the statute. Under the WPCL, the term "employer" is defined as follows: "every person, firm, partnership, association, corporation, receiver, or . . . any

*agent* or officer of any of the above-mentioned classes employing a person in this Commonwealth." 43 P.S. § 260.2a (emphasis supplied); (*see also* JA 0073-JA 0075, this Court's November 20, 2015 Order on Sequent's Motion to Dismiss). This Court previously ruled that Plaintiff's WPCL claim only survives if he can demonstrate that an agency relationship existed between Aeroseal and Sequent. (JA 0073-JA 0075). Implicit in the Court's ruling was that, assuming Sequent was Aeroseal's agent, Aeroseal granted Sequent a scope of authority sufficient to give rise to liability under the WPCL.

As set forth in this Court's November 20, 2015 Order, the burden of establishing an agency relationship rests upon the party asserting its existence. *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000) (citing *Scott v. Purcell*, 415 A.2d 56, 61 n.8 (Pa. 1980)). Vicarious liability due to an agency relationship can be based on the agent's actual authority or apparent authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent to so act." Restatement (Third) of Agency § 2.01 (2006). "Actual authority can be either expressed by the principal's statements to the agent or implied from the principal's conduct towards the agent." *N.L.R.B. v. United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 30, AFL-CIO*, 1992 WL 372381, at *21 (3d Cir. Aug. 10, 1992). An essential requirement for establishing actual authority is that it stems from a manifestation by the principal. Restatement (Third) of Agency § 3.01 cmt. b.

This Court found that, with respect to Plaintiff's Amended Complaint, Plaintiff had "alleged no facts from which it could be concluded that either Aeroseal or Sequent granted express authority to the other party. The Amended Complaint has pointed to no document in

which Sequent or Aeroseal agreed to act as the agent of the other. Nor does it include any allegations that Sequent or Aeroseal granted the other party such authority verbally." (JA 0075).

In fact, the PEO Contract explicitly sets forth Sequent's authority and responsibilities versus Aeroseal's, providing clear limitations on Sequent:

- [Aeroseal] will have: (i) direction and control over the Worksite Employees as is necessary to conduct [Aeroseal's] business, discharge any fiduciary responsibility it may have, or comply with any applicable licensure, regulatory or statutory requirement of [Aeroseal]. . . .

- This Agreement does not change the underlying employment relationship between any Worksite Employee and [Aeroseal] and does not create any rights for a Worksite Employee that did not previously exist. . . . [Aeroseal] acknowledges that Sequent does not become a party to any employment agreement between [Aeroseal] and any Worksite Employee.

- . . . Sequent will provide [Aeroseal] with employer services set forth below ("Services"). [Aeroseal] acknowledges that Sequent's provision of its services is dependent upon the completeness, accuracy, and timeliness of the information that [Aeroseal] provides to Sequent."

(JA 0733 at I.B.2. and I.C.; JA 0734 at IV.). Further, with respect to wage payment responsibilities, the PEO Contract specifically states that "Sequent will pay Worksite Employees *as reported by [Aeroseal] to Sequent*" and "[Aeroseal] will provide Sequent with complete and accurate . . . information needed for Sequent to accurately pay Worksite Employees. *[Aeroseal] is solely responsible for its compliance with the FLSA and state and local wage and hour laws*." (JA 0734 at IV.A.; JA 038 at IX.1.B.) (emphasis added). These provisions make clear that Aeroseal maintains fiduciary responsibility over its employees and narrowly limits Sequent's authority with respect to wage payment obligations to, essentially, "pay Aeroseal's employees as Aeroseal instructs."

There is no evidence that Aeroseal imbued Sequent with additional authority outside of the scope of the PEO Contract. While Sequent was authorized by Aeroseal to process payroll and

perform certain limited administrative tasks on behalf of Aeroseal, the record developed during discovery is devoid of facts that would expand Sequent's authority sufficiently to give rise to liability under the WPCL. Nor are there facts to demonstrate that, to the extent Sequent served as an agent for Aeroseal, Sequent was engaged in an active decision making role as required by the WPCL to make Sequent liable as an "employer" (agent) under the statute.

The courts in Pennsylvania have previously explained the purpose of the "agent or officer" language in the WPCL as follows:

> [T]he purpose of the legislature holding officers or agents liable . . . [w]as to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments. Its reason for doing so is obvious. Decisions dealing with personnel matters and the expenditure of corporate funds are made by corporate officers and it is far more likely that the limited funds of an insolvent corporation will be used to pay wages and that a work force will be reduced while the corporation is still capable of meeting its obligations to its employees if personal liability is imposed on the persons who make these decisions.

*Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid–Atl. Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. Ct. 2004). Consistent with the purpose of this language, "[t]o hold an 'agent or officer' personally liable for unpaid wages, *evidence of an active role in decision making is required.*" *Schneider v. IT Factor Prods.*, 2013 WL 6476555, at *5 (E.D. Pa. Dec. 10, 2013) (emphasis added). "Restated, under the WPCL, an agent or officer will be held liable as an employee if it can be established that he or she was actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation." *Silfee v. Automated Processing, Inc.*, 2015 WL 1137526, at *4 (W.D. Pa. Mar. 12, 2015); *see also Hay Acquisition Co., I, Inc. v. Bhula*, 2004 WL 2106548, at *1 (E.D. Pa. Sept. 21, 2004) ("Whether an agent or officer is subject to personal liability under the WPCL hinges on whether that person exercises a policy-making function within the business enterprise.").

Another Pennsylvania federal court has considered the issue of whether an outside payroll and HR management company qualified as an "employer" under the WPCL and determined that it could not be held liable for alleged unpaid wages. *Silfee*, 2015 WL 1137526 at *1-6. In the *Silfee* case, the defendant ADP, like Sequent, was "a provider of business processing and cloud-based solutions, including payroll, talent management, human resources management, benefits administration, and time and attendance, to employers . . . around the world." *Id.* at *1. The entity that actually employed plaintiff entered into a contract with ADP "for the provision of various payroll services. . ." *Id*. According to plaintiff, various fees were improperly deducted from his pay under a paycard or timecard system that was put in place by ADP under the contract it entered into with plaintiff's employer. *Id.* Based on the above, plaintiff brought a WPCL claim against ADP premised on the assertion that ADP was an agent of his actual employer and, as a result, could be held liable for the alleged unpaid wages under the WPCL. *Silfee*, 2015 WL 1137526 at *1-3. ADP moved to dismiss the WPCL claim on the ground that it did not qualify as an employer and was not subject to liability under the WPCL. *Id.* at *3.

Against this backdrop, the court analyzed whether ADP qualified as an agent of plaintiff's actual employer either (1) by being actively involved in corporate policymaking and decision-making or (2) under the common law definition of an agent. *Silfee*, 2015 WL 1137526 at *4-5. There were a dearth of factual allegations tending to establish that ADP was actively involved in corporate policymaking or decision-making; the implementation of a payroll system was insufficient, even at the motion to dismiss stage, to support the conclusion that ADP was an agent of plaintiff's actual employer. *Id.* at *4. Moreover, the purported fact that ADP had entered into a contract with plaintiff's actual employer to provide payroll services and implemented the paycard or timecard system that resulted in the purported improper deductions from plaintiff's pay, failed

8

to give rise to a common law agency relationship between ADP and plaintiff's actual employer. *Id.* at *5. Rather, from all indications, ADP was an independent contractor, not an agent, of plaintiff's actual employer that simply agreed to perform payroll services in exchange for a fee. *Id.* In the absence of an agency relationship between ADP and plaintiff's employer, the WPCL claim asserted against ADP failed as a matter of law and was dismissed.

As in *Silfee*, Sequent is not an agent of Plaintiff's actual employer, Aeroseal, that can be held liable for the alleged wages under the WPCL. As an initial matter, there is no evidence in the record indicating that Sequent was involved, actively or otherwise, with Aeroseal's corporate policymaking and decision-making including decision-making relating to the compensation and termination of Aeroseal employees, including Plaintiff. To the contrary, the undisputed evidence in the record demonstrates that Aeroseal alone made the decision to terminate Plaintiff for cause, Aeroseal alone decided that Plaintiff was, therefore, not entitled to PTO and directed Sequent accordingly, and Aeroseal alone determined that Plaintiff did not qualify for the commission payments at issue and, therefore, did not instruct Sequent to pay them.

Moreover, Sequent's agent authority, if any, is limited in scope to such a degree that it cannot be liable under the WPCL. The scope of any agency relationship is necessarily limited by the conduct of parties. *See, e.g., Ortiz v. Duff-Norton Co., Inc.*, 975 F. Supp. 713, 718 n. 2 (E.D. Pa. 1997) ("Express authority occurs where there is authority directly and specifically granted by the principal to the agent that binds the principal as to certain matters."); *Stout St. Funding LLC v. Johnson*, 873 F. Supp. 2d 632, 641 (E.D. Pa. 2012) ("Apparent authority is the power to bind the principal where the principal has not actually granted authority but which he leads persons with whom his agent deals to believe that he has granted."). The PEO Contract explicitly provides that Sequent must process payroll in accordance with instructions it receives from Aeroseal. Sequent

9

has no independent obligation or ability to issue payments to Aeroseal's employees, including Plaintiff. Despite this, Plaintiff attempts to hold Sequent – the agent – liable for the alleged misdeeds of Aeroseal – the principal. Agency law dictates that the principal can be liable for the actions of the agent – not the other way around: "It is a general rule of law that the principal in a principal/agent relationship is only bound by, and liable for, the acts which his agent does with or within the actual or apparent authority from the principal. . . ." *Turner Hydraulics Inc. v. Susquehanna Const. Corp.*, 606 A.2d 532, 534 (Pa. Super. Ct. 1992); *see also William B. Tanner Co., Inc. v. WIOO, Inc.*, 528 F.2d 262, 267 (3d Cir. 1975) ("Under Pennsylvania law, an agent may bind his principal to third persons where his acts are within the scope of the authority which the principal has caused or permitted him to possess."). It is illogical that Sequent could be liable as Aeroseal's agent.

Finally, in ruling on ADP's motion, the *Silfee* court focused on the overall intent and purpose of the WPCL. *Silfee*, *supra*, 2015 WL 1137526 at *3-6. As the court explained, the WPCL was "enacted . . . to provide a vehicle for employees to enforce payment of their wages and compensation held by their employers," meaning "an employee's primary recourse for recovery of unpaid wages is from his [or her] actual employer." *Id.* at *4. The liability of an agent or officer is "contingent liability" and only arises where a party's actual employer is unable to pay the allegedly unpaid wages. *Id.* (citing *Belcufine v. Aloe*, 112 F.3d 633, 639 (3d Cir. 1997)). Here there is nothing in the record tending to show that Aeroseal, an active and seemingly successful business, will be unable to pay the approximately $8,000 in wages (commissions and vacation pay) that are purportedly owed to Plaintiff. Not only is it unnecessary to hold the alleged agent, Sequent, liable for the wages that may be owed by the principal, Aeroseal, since the principal is fully able to pay the wages, but it would also be fundamentally unfair to do so based on the facts of this case. As

10

Plaintiff himself admitted, he has no agreement with Sequent and he has no information to demonstrate that Sequent breached any agreement it had with Aeroseal. Accordingly, the liability, if any, under the WPCL should be placed on Aeroseal.

> **D.** **Summary judgment should be granted as to the WPCL claim because Plaintiff was timely paid the totality of wages he was entitled to receive from Aeroseal.**

In the alternative, summary judgment should be granted as to the WPCL claim because Plaintiff was timely paid the totality of wages he was entitled to receive from Aeroseal. The WPCL "requires employers to pay all wages or compensation earned up to the date of separation." *Junguzza v. Gemalto, Inc.*, 2014 WL 3887753, at *5 (E.D. Pa. Aug. 6, 2014). As the courts have emphasized, "the WPCL does not create a substantive right of compensation, but only provides a remedy where an employer violated an independent contractual obligation to pay wages." *Sleiman v. DHL Express*, 2009 WL 1152187, at *6 (E.D. Pa. Apr. 27, 2009); *see also Scully v. US Wats, Inc.*, 238 F.3d 497, 516-17 (3d Cir. 2000) ("[T]he WPCL does not create a new right to compensation, but rather, merely establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay.").

Assuming *arguendo* Sequent is deemed an employer of Plaintiff, the undisputed material facts establish that the WPCL claim still fails. Plaintiff testified that the wages at issue in this case include only (1) accrued and unused PTO, and (2) commission he purportedly earned from two customers. The terms of the contractual agreements at issue, the offer letter, and employee handbook undisputedly demonstrate that Plaintiff is not entitled to these alleged wages, meaning Sequent did not and could not have breached a contractual duty to pay wages.

Although the WPCL defines wages to include fringe benefits such as unpaid vacation (PTO), whether an employee is entitled to unpaid PTO at the time an employee is discharged is dependent on whether there is a contractual entitlement to do so. *Harding v. Duquesne Light Co.*,

882 F.Supp. 422 (W.D. Pa. 1995). Here, the employee handbook, which was incorporated into the offer letter Plaintiff signed with Aeroseal, unambiguously addresses when an Aeroseal employee *may* be entitled to the payment of accrued and unused PTO following the termination of employment. The employee handbook plainly states that when Aeroseal, *in its sole discretion*, terminates an employee for cause, the employee forfeits any remaining unused PTO. (JA 0668). Aeroseal rightfully and appropriately terminated Plaintiff for cause because he fell woefully short of meeting his sales quotas. Plaintiff's sales quota in 2013 alone was "fourteen (14) [Aeroseal] machines," but throughout his entire one year tenure with Aeroseal, which spanned both 2013 and 2014, he was only able to sell a total of five Aeroseal machines. (JA 0647; JA 0807). After Plaintiff displayed a consistent track record of failing to come close to meeting his agreed upon sales quotas, Aeroseal properly terminated his employment for cause. Because, in accordance with the clear terms of the employee handbook, Aeroseal terminated Plaintiff's employment for cause, as was its right in its sole discretion, Plaintiff is not entitled to the payout of unused PTO.

Similarly, Aeroseal's Compensation Plan dictates under what circumstances Plaintiff would be entitled to commissions. Contrary to that Compensation Plan, which was part of the offer letter Plaintiff signed with Aeroseal, Plaintiff claims he should have been paid commission for two customers, Remediation Specialists and Carrier. Plaintiff admits that two conditions must be met before an Aeroseal employee in Plaintiff's position is entitled to commission payments: (1) Aeroseal received final payment for the machine; and (2) the employee is actually employed when the commission comes due "in the last paycheck of the month." (JA 0922 at 84-85; JA 0991-JA 0992 at 29-30).

In this instance, the two customers Plaintiff identified, Remediation Specialists and Carrier, had not made final payments to Aeroseal at the time Plaintiff's employment was terminated for

cause. (JA 0993-JA 0995 at 34-42). The triggering mechanism for receiving commission, receipt of "final payment," had not occurred when Plaintiff was terminated. Additionally, Plaintiff did not meet the second criteria of being employed when the commissions were paid. *See, e.g., Terlescki v. E.I. Dupont de Nemours & Co.*, 1992 WL 211531, at *1-2 (E.D. Pa. Aug. 24, 1992) (dismissing claim for unpaid commission and enforcing commission plan that, in part, stated "[n]o commission payments will be made after termination . . . ."); *Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577, 1578-80 (E.D. Pa. 1985) (rejecting claim for unpaid commission and enforcing commission plan that, in part, stated employees "forfeit all rights to commissions which have not been paid at termination of employment"). Accordingly, Sequent is entitled to summary judgment on Plaintiff's WPCL claim because neither Aeroseal nor Sequent breached a contractual duty to pay Plaintiff wages.

> **E.     Summary judgment should be granted as to Count V because Sequent was not unjustly enriched at any time relevant to this case.**

Summary judgment should be granted as to Count V because Sequent was not unjustly enriched at any time relevant to this case. The elements of an unjust enrichment claim in Pennsylvania are as follows: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Novae Corporate Underwriting Ltd. v. Atlantic Mut. Ins. Co.*, 556 F. Supp. 2d 489, 496 (E.D. Pa. 2008); *see also Stutzle v. Rhone-Poulenc S.A.*, 2003 WL 22250424, at *1 (Pa. C.P. Phila. Cnty. Sept. 26, 2004) (dismissing unjust enrichment claim because plaintiffs neither "had . . . direct dealings with defendants" nor did "plaintiffs . . . confer a benefit upon defendants"). As these elements make clear, "the heart of a claim for unjust enrichment is that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be

unconscionable for the party to retain without compensating the provider." *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721 (E.D. Pa. 2013) (citing *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987)). The courts have further emphasized that "[u]njust enrichment is a creature of equity that seeks to balance the interests of parties who have exchanged a benefit without agreeing on terms." *Goldsmith Assocs., Inc. v. Del Frisco's of Phila., Inc.*, 2009 WL 3172752, at *4 (E.D. Pa. Oct. 1, 2009).

Here, the undisputed material facts make it clear that the unjust enrichment claim asserted against Sequent fails. Plaintiff conceded during his deposition that he did not perform any work for or on behalf of Sequent. Plaintiff, for example, did not (1) sell anything for Sequent, (2) solicit potential customers on behalf of Sequent or (3) contact possible new customers for Sequent. (JA 0966 at 259-260). The entire purpose of Plaintiff's position was to market and sell Aeroseal products, within his defined sales territory, to new and existing Aeroseal customers. To the extent Plaintiff conferred any benefit through the sales work he performed, such benefit was conferred on Aeroseal, not Sequent. The only benefit Sequent received was compensation it rightfully earned, under the PEO Contract, for the PEO services it performed for Aeroseal. (Plaintiff testified that he has no evidence to demonstrate that Sequent breached any contract it may have had with Aeroseal.) The compensation Sequent received for the PEO services it performed for Aeroseal was neither tied to nor contingent upon the number of Aeroseal products and services Plaintiff sold in his sale territory.

Against this backdrop, the notion that Plaintiff conferred any type of tangible benefit on Sequent, through the sales and marketing work he performed for Aeroseal or otherwise, is nonsensical. Furthermore, it is not unjust for Sequent to retain the compensation it earned and

received from Aeroseal for performing PEO services. Summary judgment should, therefore, be granted as to Plaintiff's claim for unjust enrichment.

> **F.** **The claims asserted against Sequent should be dismissed as a sanction for Plaintiff's ongoing and continual refusal to cooperate in discovery.**

The claims asserted against Sequent should be dismissed as a sanction for Plaintiff's ongoing and continual refusal to cooperate in discovery. "[I]f a party fails to obey a discovery order, the [c]ourt may impose sanctions, including the dismissal of actions or parts thereof. The choice of an appropriate sanction is committed to the sound discretion of the district court." *Watson v. Dureault*, 2008 WL 2571405, at *1 (E.D. Pa. June 24, 2008). Stated differently, "[a] court may dismiss an action as a sanction against a party who fails to comply with the Federal Rules of Civil Procedure, including discovery rules, or any order of the court." *Butler v. Beneficial Mgmt. Corp.*, 2000 WL 1428682, at *1 (E.D. Pa. Sept. 27. 2000). The factors courts consider, when deciding whether to dismiss all or part of a case as a sanction, are as follows:

> (1) [T]he extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Based on these factors, it is clear that Plaintiff's purported, yet entirely meritless, claims against Sequent should be dismissed as a sanction for his ongoing and continual refusal to cooperate in discovery.

On December 8, 2015, nearly two months before Plaintiff's first deposition, Sequent served discovery requests on Plaintiff that, in substance, sought all documents and emails that were potentially relevant to the WPCL and unjust enrichment claims Plaintiff had asserted against it. Despite Plaintiff's representations to this Court to the contrary, Plaintiff did not produce any

documents in response to Sequent's discovery requests until February 1, 2016, the day before Plaintiff's deposition. During Plaintiff's deposition, however, it became apparent that Plaintiff had failed to search for and produce a number of document and emails that were potentially relevant to his claims. The initial deposition was adjourned and scheduled to recommence a few days later, on February 5, 2016, providing Plaintiff with additional time to search for and produce the documents and emails he previously failed to produce. Nevertheless, during the continuation of Plaintiff's deposition on February 5, 2015, Plaintiff admitted that he still had not completed his search for potentially relevant documents and emails because he allegedly "did not have enough time" to do so. (JA 0974 at 11-12).

Following the deposition on February 5, 2016, and on the last day of discovery, Plaintiff produced an additional 119 pages of documents, with no reasonable excuse for the delay. Due to Plaintiff's dilatory conduct and unwillingness to comply with his discovery obligations, this Honorable Court extended the discovery deadline for the limited purpose of allowing the defendants to again depose Plaintiff for the purpose of asking him about the 119 pages of documents that were belatedly produced. In accordance with the Court's Order and instructions, Plaintiff was deposed, for a third time, on February 25, 2016. During this third deposition, Plaintiff testified that he still had not produced all potentially relevant documents and emails, but instead subjectively cherry-picked certain emails from a laptop computer he had in his possession the entire time but inexplicably previously failed to search for potentially relevant emails. (JA 0990 at 22-23). At this point, discovery is closed and Sequent is only left to guess at what other documents Plaintiff may have that he simply chose not to produce.

As the above makes clear, from day one, Plaintiff has approached discovery with the view that the discovery rules simply do not apply to him. Plaintiff's lack of cooperation in discovery

has forced Sequent to incur the otherwise unnecessary costs of seeking this Court's assistance and multiple depositions. Plaintiff's evasive and cavalier attitude towards discovery must be combined with the highly questionable merit of the claims Plaintiff has attempted to assert against Sequent. As a result of Plaintiff's willful refusal to comply with his discovery obligations, Sequent has unnecessarily incurred significant legal fees and costs defending itself against claims that should never have been brought in the first place. Accordingly, the WPCL and unjust enrichment claims should be dismissed as a sanction for Plaintiff's ongoing failure to cooperate during discovery and comply with his discovery obligations under the Federal Rules.

## V.    CONCLUSION

Based on the foregoing, Defendant Sequent, Inc. respectfully requests this Honorable Court to enter an order, substantially in the form appended hereto, granting summary judgment and dismissing all remaining claims asserted against it in the Amended Complaint, and/or dismissing all remaining claims asserted against Defendant Sequent, Inc. in the Amended Complaint as a sanction for Plaintiff's continual refusal to cooperate in discovery.

**FISHER & PHILLIPS LLP**

*/s/ Lori Armstrong Halber*
Lori Armstrong Halber, Esq.
Gregory D. Hanscom, Esq.
150 N. Radnor Chester Road, Ste. C300
Radnor, PA 19087
Telephone: (610) 230-2150
Facsimile: (610) 230-2151
lhalber@laborlawyers.com
ghanscom@laborlawyers.com

*Attorneys for Defendant*
*Sequent, Inc.*

Date: March 16, 2016