IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAMI MIKHAIL ,**<br>　　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**AEROSEAL, LLC and SEQUENT, INC.,**<br>　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  15-1505** |

## MEMORANDUM OPINION

Plaintiff Rami Mikhail sued Aeroseal, LLC ("Aeroseal") where he worked as a Regional Director of Commercial Sales and Sequent, Inc. ("Sequent"), a professional employer organization that handled certain administrative functions for Aeroseal, after he was fired from his job.[1]  Before the Court are three motions for summary judgment: (1) Aeroseal's motion, which seeks summary judgment with respect to Plaintiff's claim under Pennsylvania's Wage Payment and Collection Law (" WPCL"), his breach of contract and fraud/misrepresentation claims, and Aeroseal's counterclaim for conversion; (2) Sequent's motion, which also seeks summary judgment with respect to Plaintiff's WPCL claim as well as sanctions against Plaintiff for failure to comply with his discovery obligations; and, (3) Plaintiff's motion, which seeks summary judgment against Sequent and Aeroseal on his WPCL claim with respect to vacation pay.

**I.      LEGAL STANDARD**

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North*

---

[1] Plaintiff has voluntarily withdrawn his Fair Labor Standards Act (FLSA) and unjust enrichment claims against Aeroseal.  His unjust enrichment claim against Sequent will be dismissed for failure to provide any responsive argument as to why summary judgment should be granted on that claim.  *Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 432 (E.D. Pa. 2008) (*citing Hackett v. Cmty. Behavioral Health*, No. 03-6254, 2005 WL 1084621, at *6 (E.D. Pa. May 6, 2005) (holding that a plaintiff's failure to address a claim waives the opportunity to contest summary judgment on that ground)).

*Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

## II. DISCUSSION

### A. *Aeroseal's Motion*

#### 1. WPCL

The WPCL provides employees with a statutory remedy when their employers fail to timely pay earned compensation. *Scully v. US WATS, Inc.*, 238 F.3d 497, 517 (3d Cir. 2001) (citing 43 Pa. Stat. Ann. § 260.5(a) (1992)). Because the WPCL "does not create a new right to compensation," *id.* at 516, but rather, guarantees that an employee be paid for all wages or compensation earned up to the date of the separation, a plaintiff's right to compensation under the WPCL depends upon the language of the employment contract. *Sendi v. NCR Comten, Inc.*, 619 F. Supp. 1577, 1579 (E.D. Pa. 1985), *aff'd sub nom, Sendi v. N.C.R. Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986) ("The contract between the parties governs whether specific wages or commissions are 'earned'" under the WPCL). Plaintiff asserts that the wages he is owed under his contract include: (1) unpaid commissions; and (2) accrued paid time off ("PTO"), or vacation pay. Aeroseal does not dispute that the terms of Plaintiff's employment provide for the potential to earn commissions and vacation pay, or that both types of wages fall within the ambit of the WPCL. Rather, Aeroseal's sole argument is that Plaintiff is not in fact owed such amounts.

A review of the record indicates that, at a minimum, Plaintiff has raised a material issue of fact with respect to whether he is owed accrued vacation pay.  The Employee Handbook, which is incorporated into Plaintiff's offer letter, states that "if the Company, in its sole discretion, terminates [Plaintiff's] employment for cause, [he] may lose any remaining unused PTO [Paid Time Off]."  JA 644, 668 (emphasis added).  There is no definition of "for cause" in the documents and, absent such a definition, the Court is unable to determine what the term "for cause" means.  *See Joy v. Hay Grp.*, *Inc.*, 403 F.3d 875, 876 (7th Cir. 2005) (Posner, J.) ("[T]here may be a difference between "cause" for discharge and "cause" for denial of severance pay.  Business firms almost always reserve the right to fire an employee . . . if the firm decides that the employee's performance is unsatisfactory.  But it is precisely because of the insecurity of such employment . . . that employment contracts often provide for severance pay.").  It is also unable to divine – given that the language of the employee handbook states that if an employee is terminated "for cause," he "*may* not" be entitled to vacation pay – which instances when an employee is terminated for cause warrant accrued vacation pay and which do not.

The parties do seem to agree that the reason given for Plaintiff's termination was poor performance – but they do not agree whether Plaintiff's performance was in fact poor.  Amit Gupta, Aeroseal's CEO, and Plaintiff's supervisor, Neal Walsh, both testified that Plaintiff's poor performance is documented in his year-end review as well as in a "further write-up in March 2014."

Focusing first on the year-end review: There are comments in the review that Plaintiff's "[n]ew contractor add[ition]s fell short" and that he had "[d]ifficulty in translating interest to sales with 6-8 weeks."  JA 652.  But there are also positive statements concerning Plaintiff's work at the company including that he "has developed a good relationship with the existing

3

dealers," that he is a "key contributor to discussions about overall strategy and execution of the business plan," and that "[h]is relaxed style and confidence is [sic] an asset to the team." JA 651-52.  Although the review contains concerns about making sales, and Plaintiff acknowledges that he failed to meet an initial quota of selling two Aeroseal machines per month, he contends that Aeroseal knew that such a target was unachievable and that he was not actually expected to meet the stated quota.  JA 955, JA 925 ("So there wasn't, you didn't do two this month, you're gonna get fired, right.  None of that.").  This, and the fact that he got a two-percent raise following his review, raises a genuine issue of material fact as to whether his performance was in fact poor and, thus, as to whether he was terminated for cause.

Neither does correspondence following the year-end review provide a clear cut answer to the question.  While a March 20, 2014 email from Walsh to Plaintiff stresses the importance of wrapping up various sales that month because "[w]e have an aggressive plan . . . and we need to stay on track," JA 773, a reasonable fact finder could view it as an e-mail encouraging Plaintiff to work harder rather than as an e-mail indicating dissatisfaction with Plaintiff's performance.  On the other hand, Aeroseal's dissatisfaction with Plaintiff is evident in a March 26, 2014 email from Aeroseal employee Dan Crowe to Sequent, which states that "we have another termination we need to deal with" because Plaintiff "significantly underperformed his quota and overall sales expectation in his territory."  JA 772.  While this is a strong indicator that Plaintiff was fired for poor performance, construing it in the light most favorable to Plaintiff in the context of the other factors discussed above, a reasonable factfinder could conclude that it was not Plaintiff's poor performance that led to his termination.[2]

---

[2]  Having concluded that a genuine issue of material fact exists as to whether Plaintiff suffered an injury under the WPCL because he is owed accrued vacation pay, the Court need not now separately address Plaintiff's allegations that Defendants violated the WPCL by failing to pay him commissions.

### 2. Breach of Contract

Aeroseal offers no arguments with respect to the breach of contract claim beyond those it raised in connection with its WPCL claim. Aeroseal Mot. at 18 ("The analysis under the WPCL and for breach of contract is the same."). Thus, for the reasons discussed above, there is at least a genuine issue of material fact as to whether Aeroseal breached its contract with Plaintiff concerning accrued vacation pay, and, accordingly, Aeroseal's motion is denied.

### 3. Fraud/Misrepresentation

To prevail on his fraud/intentional misrepresentation claim against Aeroseal, Plaintiff must establish facts showing, *inter alia*, that Aeroseal made a misrepresentation of material fact. *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256-57 (3d Cir. 2013); *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa.*, 7 A.3d 278, 290 (Pa. Super. 2010). Plaintiff's claim is premised on alleged misrepresentations concerning the wages he could expect to earn and his ability to earn commissions. Aeroseal argues that neither Plaintiff's offer letter nor the documents attached to it contain any false or misleading statements and that because Plaintiff's offer letter contains an integration clause, he is barred from relying on any oral or written statements presented to him prior to signing the offer letter.[3]

The only admissible evidence Plaintiff points to in support of his claim is a spreadsheet, attached to and incorporated by his offer letter, which Plaintiff argues showed "projected earnings." Plaintiff argues that the spreadsheet misrepresented the number of sales he could expect to make in his position and thus misrepresented the amount of commissions he could reasonably expect to earn. Although Plaintiff originally contended that he was told the

---

[3] Plaintiff asserts that "communications during the offer period that related to the documents attached to the Offer Letter are not subject to the parol evidence rule," but cites no case law in support of such a proposition. Accordingly, the Court shall not consider such statements. *See Green Valley Dry Cleaners, Inc. v. Westmoreland Cnty. Indus. Dev. Corp.*, 832 A.2d 1143, 1154 (Commw. Ct. Pa. 2003) (citing *Lenzi v. Hahnemann*, 664 A.2d 1375, 1379 (Pa. Super. Ct. 1995) ("The parol evidence rule bars the admission of oral testimony which purports to explain or vary the terms of an integrated written document.")).

spreadsheet was drafted using historical data, he eventually conceded at his deposition that the spreadsheet does not so state.  JA 950-51.  Plaintiff's supervisor, Neal Walsh, testified that the spreadsheet was created simply to assist Plaintiff in calculating his projected earnings from commissions if he fulfilled his quotas and that he never shared historical sales data with Plaintiff.  JA 1263-64.  Thus, because Plaintiff has failed to point to any evidence from which a reasonable factfinder could infer that Aeroseal made a material misrepresentation, Aeroseal's motion for summary judgment is granted.

### 4. Aeroseal's Counterclaim

Finally, Aeroseal moves for summary judgment with respect to its counterclaim for conversion seeking the return of Plaintiff's work cell phone and laptop.  Plaintiff offers no argument in opposition to Aeroseal's motion and moreover states that he "is and remains willing and agreeable to turn over the laptop and has offered, through counsel, to do so."  Accordingly, Aeroseal's motion is granted.

### B. *Sequent's Motion*

Sequent argues that even if Aeroseal is liable under the WPCL, it is entitled to summary judgment on that claim because it does not qualify as Plaintiff's "employer" under the statute.  The WPCL defines an "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."  43 Pa. Stat. § 260.2a.  Here, Plaintiff argues that Sequent is liable as Aeroseal's agent.[4]  In the context of the WPCL, an

---

[4] In his opposition to Sequent's motion and in support of his own motion, Plaintiff argues that Sequent and Aeroseal are both his employers because both entities appear on a draft Severance Agreement that he claims he received as an offer of settlement.  Because the Severance Agreement is an offer of compromise under Federal Rule of Evidence 408, a contention which Plaintiff does not countermand, the agreement is inadmissible and shall not be considered in connection with any of the present motions.

agent is liable for an employer's failure to pay a plaintiff only when it can be found to have exercised a policy-making function in the company. *Central Pa. Teamsters Pension Fund v. Burten*, 634 F. Supp. 128, 131 (E.D. Pa. 1986). Moreover, the agent must have "actively participated in decisions or g[iven] advice regarding pay or compensation." *Mahoney v. McClure*, 568 A.2d 682, 686 (Pa. Super. 1999). "Merely carr[ying] out decisions made by others" is insufficient. *Id*. Sequent urges the Court to adopt the holdings of other district courts that, in order to be held liable under the WPCL as an agent, a Defendant must have also participated in the *specific decision* to withhold the plaintiff's wages. Sequent Reply at 4 (citing *Britton v. Whittmanhart, Inc.*, No. 09-1593, 2009 WL 1855325, at *3 (E.D. Pa. June 25, 2009)). At present, the Pennsylvania Supreme Court has not opined on whether there is such a requirement. In deciding this motion, however, the Court need not reach that issue because, as explained below, the record shows that Aeroseal agreed to consult with Sequent concerning any adverse employment action such as termination, and thus, viewing the evidence in the light most favorable to Plaintiff, a factfinder could reasonably conclude that Sequent was involved in the decision to terminate him and deny him pay.

In its moving brief, Sequent argues that "the undisputed evidence in the record demonstrates that *Aeroseal alone* made the decision to terminate Plaintiff for cause, [and] *Aeroseal alone* decided that Plaintiff was, therefore, not entitled to PTO and directed Sequent accordingly," but provides no citations to the record to support such a conclusion. Sequent Mot. at 9 (emphasis added).[5] Sequent's role, it argues, was limited to "process[ing] payroll in

---

[5] In its reply memorandum, Sequent argues that Plaintiff admitted in his response to Sequent's Statement of Undisputed Facts that Sequent was not responsible for paying Plaintiff's commissions and that it was Aeroseal's decision to terminate Plaintiff and withhold his PTO. Sequent Reply at 5 (citing Dkt. No. 56 at ¶¶ 1-3, 15, 26, 28-29, 31, 41). None of Plaintiff's admissions foreclose the possibility that Sequent maintained policy-making authority with respect to Plaintiff's termination or that it was directly involved in the decision to withhold any of Plaintiff's accrued wages. Accordingly, Plaintiff's admissions do not constitute grounds for summary judgment.

accordance with instructions it receive[d] from Aeroseal." *Id.*  In support, Sequent points to the Coemployment Client Service Agreement ("CSA") between Sequent and Aeroseal.  In particular, Sequent quotes certain portions of its agreement with Aeroseal which, among other things, provide that "[Aeroseal] will have: (i) direction and control over the Worksite Employees as is necessary to conduct [Aeroseal's] business," and that "Sequent will pay Worksite Employees *as reported by [Aeroseal] to Sequent*." JA 733-34 (emphasis added).  Sequent interprets these provisions as a clear indication that Sequent did not have policymaking authority with respect to Aeroseal's wage payment obligations.

    A review of the entire CSA contract, however, reveals numerous provisions that would allow a reasonable jury to conclude that Sequent does possess a policy-making function with respect to the termination of Aeroseal employees and, thus, any wages owed to them.  To begin, the CSA provides that "Sequent and [Aeroseal] will *each* have a right to hire, discipline and terminate the Worksite Employees," and that Aeroseal "agrees to consult with Sequent before taking an adverse-employment action such as firing, disciplining (whether oral or written), demoting or an action that could lead to an employment claim." JA 734 (emphasis added).  In addition, "Sequent will also provide [Aeroseal] with policies and procedures regarding commercially-accepted human resource practices, designated human resources, payroll and benefits professionals, a standard employee handbook, and other human resources guidance services." *Id*.  Finally, Sequent " reserves a right of control and supervision" over Aeroseal's employees, including "providing guidance to reprimand, suspend, terminate or otherwise discipline Employees" and "*creating, implementing and enforcing policies* that comply with standards, statutes and regulations regarding labor relations and the workplace." JA 733 (emphasis added).  In light of the above, there is an evident dispute of material fact as to whether

Sequent exercised a policy-making function with respect to Aeroseal's employees, including Aeroseal's decision to terminate Plaintiff and withhold accrued wages and commissions. Because Sequent has failed to point to any additional evidence that would shed light on the reasons behind Plaintiff's termination or the applicability of the "for cause" provision of the Employee Handbook, Sequent's motion is denied for the same reasons articulated above.

### C. *Plaintiff's Motion*

Plaintiff moves for summary judgment against both Aeroseal and Sequent solely on the issue of his claim for vacation pay under the WPCL. Plaintiff relies entirely upon a September 18, 2014 email between an Aeroseal employee and Sequent's outside counsel, which he asserts amounts to an "admission" that he is owed vacation time." JA 861. There is a dispute between the parties as to whether this document is admissible. However, the dispute is immaterial because all the document shows is the number of vacation hours Plaintiff has accrued, not whether Plaintiff is entitled to vacation pay per the terms of his employment. As discussed above, the record evidence concerning Plaintiff's job requirements and performance is contradictory, and there is insufficient legal or factual development to determine what constitutes "for cause" in the context of withholding Plaintiff's vacation pay. Accordingly, Plaintiff's motion is denied.

### D. *Sanctions*

Sequent also moves the Court to sanction Plaintiff by dismissing his claims against Sequent for failing to abide by his discovery obligations. The sanction of dismissal is one of "last, not first, resort." *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 218 (3d Cir. 2003). Although the record does reflect that Plaintiff was dilatory during discovery, including by producing 119 pages of documents on the last day of discovery and after his deposition had closed, *see* JA 100, the issue was addressed when, having been brought to the Court's attention,

9

Defendants were allowed to reopen Plaintiff's deposition for the sole purpose of deposing him on those documents. *See* JA 986. Plaintiff also testified that there are additional documents relating to Aeroseal that he has in his possession but has not produced. JA 990. Following the Third Circuit's "policy of favoring litigation on the merits, rather than imposing dismissals with prejudice or a default judgment," the Court shall not dismiss Plaintiff's WPCL claim – it's only remaining claim against Sequent. However, Plaintiff will be precluded from introducing at trial any document that he has not already produced in this matter.

                                                    **BY THE COURT:**

                                                    **/S/WENDY BEETLESTONE, J.**

                                                    _____

                                                    **WENDY BEETLESTONE, J.**